The next case is James King v. CVS. Mr. Busby is here for the appellate. CVS. Oh, I'm sorry, Ms. Busby. Ms. Busby. I apologize. The guerrilla for the athlete. It's career. Just like career. Just make it easy. Career. All right. Thank you. You may proceed. Old school. May it please the court, I'm Ginger Busby and I'm here on behalf of CVS. And we're here asking you to really correct miscarriage of justice. The great weight of the evidence shows that this case should have gone out on judgment as a matter of law. CVS was entitled to judgment as a matter of law at both the close of the plaintiff's evidence at the close of all the evidence in the post trial motions. There was not a legally sufficient evidentiary basis to prove, which was the burden of Mr. King, that the reason stated by CVS for the termination was not the truth. Let's look at the evidence. Okay. And so you've got Mr. Bergeson made at least four retirement related remarks. When are you going to retire? Yes, sir. You got the Me Too evidence by Roger Harris and Sherman Conaway, who were also fired. And they were both over the age of 60. Yes, sir. And they felt like they were discriminated against also on the basis of their age. We can debate about whether or not the court should have allowed that in. But that's a different question, whether the court abused its discretion. Mr. Bergeson was involved in the employment decision. Mr. King was replaced by a younger person. He never had any disciplinary problems before. Why isn't that enough for a reasonable jury to determine that he was discriminated against on the basis of his age? It's not. That's not enough? That's absolutely not enough, and there's about five reasons. There's probably about 20 reasons, I could say. At least that you presented in the brief. There may have been more. We probably ran out of space. But I want to correct the facts because this is so important. The law is that you first have to show the reason for termination is false. You actually do not even get to this pretext until you can show the reason is false. The reason for the termination was not false. This is what occurred. A gentleman came and correctly picked up a prescription, showed the correct identification that he was authorized to pick it up. Mr. King admits that. No problem with giving the prescription to the first gentleman on the 12th. On the 17th, the patient's husband comes to the pharmacy and says, hey, we didn't get one of our prescriptions. They say no. We know all those facts, okay, that what took place. And let me ask you this. Now, let's assume that it's clear that he violated company policy. You allege he violated company policy seven different ways. And the law. Okay. Let's assume he did that and he violated regulations and he shouldn't have given the customer those lower tab prescriptions and he violated company policy. Isn't the jury still entitled to say, notwithstanding that, I still think he was discriminated against, he was fired on the basis of his age, even if he violated company policy? No. The judge's role in an age discrimination case, under every case in this circuit, Gross, Chapman, Reynolds, Bogle, Wilson, I mean, I can name them all. You have to show that the reason stops. What if he violated company policy and they got rid of him because of his age? No. All right. Let's look at it this way. No. I want you to think about this. Just presume that the facts are that a supervisor has an age animus. Just presume that. But then an employee steals cash out of the register, takes home OxyContin, kills somebody, hurts them. If the law was as the question is seeking, then an employer would never be able to terminate anybody. That's not the law. What if the jury determined that if he was 35 years old and he did everything Mr. King did, he would not have been terminated? There has to be evidence of that and there was not any evidence of that. This is what the evidence was, the Me Too evidence that you pointed to. You had first Mr. Conaway. Here's what Mr. Conaway, as you said, we can talk about later. I think the court knows it was clear error to let Mr. Conaway testify. This is what he said. He said, I was terminated and I just believed or felt like it was because of my age. That's not provative. It's not prejudicial. It's prejudicial and it had occurred two years before. But you'll acknowledge that Harris is closer. I don't acknowledge Harris is closer for this reason. Harris testified to two things. He testified to two questions about retirement, one three years before he was terminated, one five years before he was terminated, and he was terminated in 2009. That is too remote. Every case in this circuit that has talked about remoteness will tell you that. I'm still not clear of who may have made a determination with regard to the legality of what Mr. King did. You're very confident in your brief that it was against the law and did either the Alabama licensing board or any state or federal entity agree with you? Well, it's entering this question. Mr. King received a letter of concern, but we were not allowed to put that into evidence. The judge did not allow that to go into evidence. He received a letter of concern from the Alabama Board of Pharmacy. Have you raised as error the judge's refusal to let that in? Yes, sir. And also, did the letter of concern indicate that he did violate the law or their rules? I don't want to mistake what it says. Do you have a copy with you? The letter of concern, I do not want to mistake what it says. It was a letter of concern. And to answer your specific question, loss prevention is who made the determination. Mr. Jeff Sanford, he was the one who was notified. You mean CBS? Yes, ma'am. But as far as the state authorities or the federal authorities, was he convicted by either? No, ma'am. No, ma'am. And I think that is something very important that as your roles in justices and as the district court judges' role, it is your role to look at the facts and look at state and federal statutes and determine if there is a violation of the law. If that is our role, then why, for example, in the civil case with impeachment or in a criminal case where there is an underlying felony conviction that is a necessary element, why don't the judges just tell the jury, oh, he is a felon for a felon in possession, or he has been convicted of a crime involving dishonesty? Why is it required that a certified copy of a conviction be entered as evidence? And the jury looks at that and makes a determination. Because in that case, there has been a specific finding by a criminal court. Doesn't that response reveal too much? No. In a civil case, the difference is this. In, for example, judgment as a matter of law, and particularly in an age case, when the defendant has proffered a reason, if the plaintiff is going to come back and say, I did not violate the law, they have to prove that the reason stated was false. The only way you can prove the reason stated was false is either to dispute the conduct, which Mr. King did not do, and that's been overlooked here. I asked Mr. King, and we cite in our brief numerous places in the records, did you do this? So you're saying it was his burden to prove that he was not convicted of it? I apologize. You're saying it was Mr. King's burden to prove he was not convicted? It was Mr. King's burden to prove that the reason we stated was false. Is that right? So, and correct me if I'm wrong, but is it his burden to prove at stage three of the burden-shifting analysis that your reason was false or that your reason was pretextual? It strikes me that those two things are different. Your reason, to Judge Wilson's question, your reason could be right, but it may not have been the motivating reason for the firing, and it seems to me that's something that a jury could make a determination about. No, and I will tell you that I thank you for asking that question. This is the law in this circuit. Chapman will tell you. It's not this crazy burden-shifting. It's a two-part test. Judge Wilson just wrote about it in the City of Mobile case. You have to prove that the reason stated is false and A.N.D., age was the real reason. That is the standard. This burden-shifting . . . That McDonnell-Douglas burden-shifting analysis is a way to assist the courts in determining whether or not summary judgment should be granted. Once the case goes to trial, the issue is, is there enough evidence of intentional discrimination that the jury can rely upon to rule for the plaintiff? I don't think burden-shifting McDonnell-Douglas is out once the case goes to the jury, isn't it? Was the jury in this case instructed on burden-shifting? The jury was instructed on the reason stated. Yes, I think they were. I'm just trying to think of the jury instructions. Yes. But, Your Honor, the . . . The jury was not instructed in this case that first, you got to find a prima facie case. Then the burden shifts to articulate a legitimate reason. Then the burden shifts back to show pretext. The jury wasn't instructed that, was it? The jury was not instructed in those words, but the jury was instructed incorrectly because, and I think this was a failure of the district court's analysis, is that the defendant never has the burden. So saying this burden-shifting is absolutely incorrect under the law. The defendant only has to proffer its legitimate nondiscriminatory reason. That's the law. It's not this burden-shifting business. In the age discrimination context, they say that we're fired. Defendant says the reason you were fired is because you violated the law and CVS policy and everything else. You've admitted the misconduct, and we've terminated you for that misconduct. Then the plaintiff has to meet head-on and rebut that stated reason. Meet it head-on and rebut it. And, then and, show age was the true reason. And the information in this record did not in any way give a sufficient evidentiary basis to show age was the true reason. The MeToo evidence should not have been let in. And Vyvanse was not nearly identical, not anywhere close to nearly identical. I'm not sure that's the test. Are you sure that's the test? Yes, sir. And what's the basis for your certainty about that? Because the way I see it, there is a longish line of seemingly contradictory statements in this court's case law, but that if you trace it back to the beginning, and that's where the governing standard would come from, that it looks like it's Holyfield. And that says same or similar. So what comes before Holyfield that says nearly identical? Maybe there is something. I just haven't seen it. What comes before Holyfield? I'm not interested in what came most recently. I'm interested in what came first. Let me think now. I've got, you know, just to help refresh your recollection, I've got Holyfield in 97, Manichea, if that's how you pronounce it, in 99, Alexander versus Fulton County in 2000, and Burke-Falla versus Orange County in 2006. So Holyfield in 97 is the first case I can find that says similar. Same or similar. Manichea says nearly identical but comes two years later. My understanding as a practicing lawyer from reading all the cases is that this court has said what the definition, what the court meant in Holyfield is nearly identical, and it has said that numerous times and given numerous examples of why that is correct. However, the Vivant situation, I would direct you to the Reynolds versus Winn-Dixie case, the Vivant situation is not even similar, and the difference is is that you have intentional decision to give away 90 Lortab outside the pharmacy, in the grocery aisle of the CVS, and in the Vivant situation, you have a mistake, an innocent act by pharmacists who searched the pharmacy, thought they couldn't find it. Both prescriptions were tied to a patient, signed for, paid for, delivered. When they realized that two were signed for, paid for, and delivered, they called and got it returned. But you know what? CVS disciplined them as well. You've reserved some time, Ms. Busby. I'm sorry. I was trying to answer the questions. All right. Thank you. Counsel, it may help to pick up where your opponent was, and that's the issue of identical versus similar and how this case fits either standard. Right. And I'll try to answer Judge Newsom's question. I believe Hollifield is probably the earliest, although Hollifield relies, and Menicia relies upon a Dartmouth, the Dartmouth review case from the First Circuit that talks for the first time about apples and oranges. And I don't like talking about apples and oranges. I agree with the Supreme Court's decision in Ash versus Tyson that phrases like that don't establish legal standards, and they're hard to understand, and they don't really clarify things. Because here we have apples and apples. We have a pharmacist and a pharmacist, and they're both subject to the same rules. They're all subject to the same laws. We're not talking about somebody making widgets. We're talking about somebody who has a profession like a lawyer, and they exercise their professional judgment. And CVS's policies, the one thing we have in our appendix, their policy makes it clear that pharmacist's duty is to make certain a patient customer gets the proper medication as needed. Mr. King testified why that's so critical. So if an event occurs where a patient said, I did not get my drugs, I don't care whether the son picked them up and the mother didn't know it, so they think they're lost until they find that out, or they're stolen by another pharmacist intern, or whether a church picks them up, the problem is the same. Drugs did not get to the patient, or they believe drugs did not get to the patient. And how they treat that person under their policy is critical, and those are comparable. They are similar. And in fact, if you look at the early cases, the first pronunciation is they have to be accused of the same or similar offense. So after that, same or similar becomes the same, and then becomes nearly identical. And so you have holding creep, that slowly but surely the holding gets stiffer and stiffer, so unless you have a Siamese twin, you will not have a comparable person. So you agree, I guess, then with my assessment of the situation, that there is some contradictory language in this court's cases. I think that absolutely, and not the least of which is as to whether or not the comparability question, the similarly situated question is applied at the prima facie case versus pretext. Now this leads us to the argument that Ms. Busby made that plaintiff had to prove that the reason was false. So again, going back to first principles, McDonnell Douglas versus Green, 1973. Mr. Green, not happy with what's going on in McDonnell Douglas, engages in a sit-in. He blocks the road to McDonnell Douglas' facility and is charged with that. And he's doing that because there's racial protest going on. And he is not rehired. Well, there is no question that he was convicted. He was violated the law. But the question is, is that why they did not rehire him, or was it because of his race? Now, CVS would have this court adopt a standard that says, if we prove A happened, B happened, C happened, then we must win. And Judge Hopkins, and I apologize for referring to judges' names. We have two different judges here. Judge Hopkins articulated that as saying, what you're really saying is the jury must believe you. The jury is not obliged to believe you. And the plaintiff doesn't have to prove that the reason is indeed false. In fact, I would argue that probably every Title VII or H case that goes to trial has gone to trial because there are facts to support that the legitimate articulated reason actually occurred. Otherwise, they wouldn't have got past summary judgment. But also facts on the other side. So every case, those facts will be in conflict. And it will be up to the jury to decide that. And in deciding that, it is a much different question than saying, A happened, B happened, C happened. And with apologies to my co-counsel, who I promised I wouldn't say this, but I've been reading Bertrand Russell's history of Western philosophy. And he discusses this question, why did something happen? And there's a mechanical answer, and there's a teleological answer. Title VII and the AGE Act require what purpose was served by firing him. Not the mechanical question is, did somebody deliver pills? Did somebody say, I didn't get it? Did he give them pills? If that's the case, the even better, just write these statutes off. That the reason is, what was the motive and intent behind CVS when they decided to use that event to fire him? What goal was achieved by CVS in doing that? And the jury had every right to say the goal was the goal articulated by Mr. Burgesson. Do you agree that as between Harris and Conaway, Conaway is the steeper hill for you in terms of Me Too evidence? Conaway does seem pretty iffy. Conaway is iffy, but almost every instance of what I'll call, I don't like putting evidence in boxes, but it's other victim, co-worker evidence. It's just other circumstantial evidence. The Supreme Court in the sprint said it can come in if the judge believes it can come in. And it came in. His is not as strong as Mr. Harris. Now, a couple points. Ms. Busby talked about this letter of concern. I do not believe there is any letter of concern mentioned in their appellate brief, so I don't think that argument was raised. I didn't remember it. I don't believe so, and I don't believe there is a letter of concern. I believe there were board minutes, but they didn't mention Mr. King by name at all. And there is literally no evidence that Mr. King was ever charged with a crime, accused of a crime, and certainly never convicted. But what we've got here is, and again, something outside the evidence, but it's in the record, Mr. Harris had had his own trial. Mr. Harris had won at his trial and proved that CVS fired him because of his age, and they did so willfully. Judge Hopkins kept that out as unduly prejudicial. So what we have is CVS arguing that despite the fact that Mr. King was never tried or convicted, the judge should have told the jury he violated criminal laws, and they're now arguing as to Mr. Harris, well, his evidence wasn't powerful enough, having kept the jury verdict out that would have filled in that gap. So they're creating this sort of alternate universe here where Mr. Harris's jury verdict would be unduly prejudicial to them, and they succeeded on that. We haven't appealed that. But at the same time, having the judge instruct the jury that Mr. King violated the law is what they're entitled to, not being unduly prejudicial. So if Conaway – if we were to conclude that the district court erred in allowing Conaway in, Conaway goes out, does that undermine the verdict? It does not undermine the verdict. In fact, I do not believe Judge Hopkins talked about either Mr. Conaway or Mr. Harris, in her opinion, denying judgment as a matter of law or new trial. There was sufficient evidence without that to uphold this verdict. And the standard is a very high standard. And what is that? In the absence, let's say that we say that Judge Hopkins abused her discretion in admitting the MeToo evidence. So what do we have left? We just have Mr. Bergeson's stray comments that they argue are pretty remote in time. They took place over how long a period of time? I believe three years. Three years. Four comments over three years. You have those comments. When are you going to retire? And then what else? You have the comments when you're going to retire, almost each one followed by a discipline at the time. You then have the inconsistent application of their own policies to other pharmacists that is there to undermine their claim. You also have the evidence that he did not violate any law. And that's where it gets to our sort of motion to strike. Their reason, articulated by them, is that he admitted to violating the law. There was no evidence that he admitted to violating the law. What if he didn't violate the law, but he violated company policy, though? He took the pills with no label on them. He put them in his pocket. There was a label on them. He pushed out a label. It was the duplicate label for the pills that had been delivered on the 12th. He didn't let the supervisors know he did it. No, he was suspended before he could let them know. And, again, the chronology is critical here. September 12th, the pills go out the door to somebody who says they're picking him up from Ms. Robinson. Mr. King's on vacation. He doesn't come back to work until the 19th. In that interim, Judge Robinson comes in and says, I need my wife's pills. He's told they've been delivered already. He says, goes back, checks, no, they haven't been delivered. I need you to fill these pills. At that point, the pharmacist had enough reason to believe those pills have gone missing. He used the duplicate label listing the wrong dispensing date and the wrong pharmacist? He reprinted the label from the 12th. So it had the original pharmacist on it and the original dispensing date of September 12th. So this was just sort of like a non-proton label. It's a non-proton label that he pushed out. Got it. Okay. And so when he gave him the Lortab, it was outside of the pharmacy or it went inside the pharmacy? He was not with us. If you're familiar with CVS, the pharmacy is sort of closed in. And as he explained it, Judge Robinson came to meet with him. There are people at the counter there. So rather than discuss it, he asked him to meet him at the end of the pharmacy and he walked out the door. Did the customer sign for the medication? He did not. See, that sounds like a lot of violation of company policy to me. And they argued that. And the jury rejected that. And the jury does not have to accept that because there were other evidence that other pharmacists had done the same or similar things and had not been terminated. But ultimately it comes down to the fact that the jury is not obligated to believe the defendant. Now, Ms. Busby also said that they have no burden at all. They have no burden. And it's true they have no burden of proof. The burden of proof is always with the plaintiff. But in Burdine, the Supreme Court made it very clear, assuming McDonnell Douglas is applicable to an age case, something not yet resolved, but they at least have the burden to articulate, not just proffer somehow, to articulate through admissible evidence their reason for terminating Mr. King. And they tried to do that. Now, they've argued that, well, Mr. Burgesson wasn't the decision-maker. Valdenta was the decision-maker. Well, if indeed they didn't put on the decision-maker, then no one articulated their reason. And there's a failure of proof at that point, which would mean the plaintiff would have been entitled to judgment as a matter of law. Counsel, there's some indication in the record that the trial judge at one point was under the impression that having ruled a certain way on the motion for summary judgment, she might be locked into ruling the same way on the Rule 50 motion. Did she do enough to correct that? I believe she did. Her comment, I think, is linked primarily to the particular history and procedure of this case, which is she ruled on summary judgment. No defense case in chief. And no defense case in chief. Had they put on something in addition, then, okay, fine, I need to look. But if I've already denied judgment as a matter of law at the plaintiff's arresting case, and it's the same as summary judgment and the standards are the same, and then put on no more evidence, like, well, what more am I supposed to do here? I've already done that once. Now, whether or not that carries over to the motion for a new trial and whether she had somewhat confusion there, interestingly Combs was cited somewhat favorably by the Supreme Court in Reeves. It was one of the two circuits that was sort of on the right side rather than the wrong side in Reeves. But nevertheless, she did exactly what she was supposed to do for a new trial is she weighed the evidence. She found them not credible.  And I think that is a point that's been somewhat missed. And on that point, the Supreme Court in a case called Unitherm Food versus Swift-Eckert, 546 U.S. 394 at 404, the Supreme Court said that this determination of whether there's a new trial calls for judgment in the first instance of the judge who saw and heard the evidence, and that that person has the feel of the case, and they appreciate the case in a way in which a printed appellate transcript cannot produce. And Judge Hawkins did that. And, of course, perhaps the two-judge rule does not necessarily apply, but Judge Bowery made a separate independent look at this record and reached the same conclusion. We have your argument, Mr. Greer. Yes, thank you. Thank you. Ms. Busby, you've reserved some time for rebuttal. Yes, sir. Three quick things. It is not the defendant's burden to prove that Mr. King broke the law. It is our burden to say what our reason was. Plaintiff's Exhibit 73A is an email stating that from loss prevention, I recommend termination based on the violations of, the intentional violations of policy and law, and Guyanta approved the recommendation of loss prevention. Mr. Bergeson did not make the decision to terminate, period. The record cites the He was involved on a phone call with HR. If you look at the email stream, you can see the times of when this all occurred. After loss prevention made the recommendation and after Baptist Guyanta approved it, he was on the call, he stated his agreement and stated that he would deliver the message. He was not the decision maker. It is their burden to prove that that's not true in the face of this written exhibit introduced by them and Mr. Sanford's testimony. But wouldn't their response just be, we did, jury believed us? No, sir. As a matter of law, they have to come forward and specifically rebut it with evidence. Please look at Stone and Webster on the nearly identical standard. This court said in Stone and Webster we have resolved this conflict in favor of the nearly identical standard. When was that case decided? 2012. So I guess the difficulty for me, and I get it, this is sort of a geeky appellate procedure issue, but my understanding is that the rule in this circuit is that it's not the most recent decision that controls. It's the first decision that controls. And so to the extent that there are cases that post-date Holyfield that say something other than same or similar, they may be wrong. Maybe I'm misunderstanding what you're saying because my understanding of the role of the court, this court, the Supreme Court, you often change your decisions, make them clear, specifically state what you meant by something, and litigants ought to be able to rely on statements such as the one that is in the Stone and Webster case that says, in Burke-Fowler, we resolved this conflict in favor of the nearly identical standard. Please ask you to look at the record. In our brief, we cited you record cites. There's a big difference between the facts being just told and the facts being cited to the record. I cross-examined Mr. King. He admitted on several of these items that, yes, it was a violation of the law. It's not okay just to print a duplicate label. That label that goes on a bottle has to have the pharmacist's name of who put the pills in that bottle. What if that person had died? Then the pharmacy name on the label is who you think put them in there. This is serious business about what a pharmacy has to do. And CVS told their, I mean, they terminated him not for any age reason. They terminated him for his numerous violations of policy and law, and he admitted the conduct. And this court has said numerous times that if they admit the misconduct, there is an uphill battle to get around it. You cannot substitute your judgment for a legitimate decision of a company. All of the errors that we cited in our brief require at a minimum a new trial. We have set forth and I have set record sites over and over. I'm sorry I don't have time to go through them, but I think we well briefed it. This case should have gone out on judgment as a matter of law. You should reverse and render. Under this court's law, read your cases. It's not enough. They didn't rebut. They didn't prove it was age. And you cannot prove it was age by own pretext in this nonprobative, irrelevant, prejudicial, not nearly identical, remote, limited amount of evidence that was put in. I'm sorry. I believe in the system. I'm sorry the jury was wrong and did not get it right and was confused and did not understand the correct legal standard. But the court should have granted judgment as a matter of law. The court should have granted the post-trial motions. Willfulness should have never gone to the jury. That should have been thrown out. There are so many errors. I really respectfully request that you reverse and render in favor of CVS. Thank you so much. All right. Thank you, counsel. And the court is adjourned. All rise.